FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:18-cr-167-T-17JSS
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)

DOUGLAS EDWIN CASIMIRI



## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h))

### A.   Introduction

At times material to this Indictment:

1.     DOUGLAS EDWIN CASIMIRI ("CASIMIRI") was a resident of Pinellas County, Florida, who opened accounts at national banks in the Middle District of Florida, and elsewhere, and recruited others to do so for him.

2.     Co-conspirator #1 was a resident of Florida who worked with CASIMIRI to open bank accounts in the Middle District of Florida.

3.     Co-conspirator #2 was a resident of Florida who was recruited by, and worked with, CASIMIRI and Co-conspirator #1 to open bank accounts in the Middle District of Florida.

4.     "Consortium Solutions International LLC," "Empire Capital Partners, LLC," "Alliance International Limited, LLC," and "Cornerstone Financial Strategies, LLC" were each shell companies registered to CASIMIRI with the Florida Department of State, Division of Corporations.   CASIMIRI went on to open various bank accounts in the name of those shell companies, or in the names of entities associated with such companies under "doing business as" or "fictitious name" registrations, for use by him and other conspirators.

5.     "Liberty Global Partners, LLC" was a shell company registered to Co-conspirator #2 with the Florida Department of State, Division of Corporations.   CASIMIRI and Co-conspirator #2 went on to open various bank accounts in the name of "Liberty Global Partners, LLC," or in the names of entities associated with such company under "doing business as" or "fictitious name" registrations, for use by them and other conspirators.

6.     A "boiler room" was a type of illegitimate sales operation that used high-pressure sales techniques, sophisticated mass-marketing, and misrepresentations to defraud individuals into believing they were investing money in regulated securities, financial products, stocks, and other investments.

7.     The term "loading" referred to a tactic used by boiler room sales agents to convince victims to send additional funds for a purported investment

opportunity, or related fees and expenses, in order to obtain the return or profit that was initially promised.

## B.     The Conspiracy

8.      Beginning on an unknown date, but at least as early as in or around February 2015, and continuing through and including the date of this Indictment, in the Middle District of Florida and elsewhere, the defendant,

### DOUGLAS EDWIN CASIMIRI,

did knowingly and willfully combine, conspire, and agree with Co-conspirator #1, Co-conspirator #2, and other persons, both known and unknown to the Grand Jury, to commit offenses against the United States, in violation of 18 U.S.C. § 1956, that is:

a.      to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of said specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

3

b.    to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### C.    **Manner and Means**

9.    The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

10.    It was a part of the conspiracy that conspirators would and did use interstate and foreign wire communications to defraud individuals throughout the world, and obtain funds from them by means of materially false and fraudulent pretenses and representations;

11.    It was further part of the conspiracy that conspirators would and did incorporate shell companies with fictitious names and then open, and cause to be opened, bank accounts in the names of those shell companies at various federally insured financial institutions in the Middle District of Florida and

elsewhere.   These accounts were opened exclusively for the purpose of receiving, transmitting, or otherwise obtaining the proceeds of specified unlawful activity;

12.    It was further part of the conspiracy that conspirators, when opening the bank accounts, would and did make materially false and fraudulent representations to the banks regarding the nature of the businesses that the shell companies were engaged in;

13.    It was further part of the conspiracy that conspirators working for boiler rooms would and did contact foreign victims, via interstate and foreign emails and telephone calls, for the purpose of offering bogus investment and other financial opportunities.   In truth and in fact, however, the purpose of those contacts was to gain their victims' trust and solicit money from them by means of materially false and fraudulent pretenses and representations;

14.    It was further part of the conspiracy that conspirators working for boiler rooms would and did contact foreign victims, via interstate and foreign emails and telephone calls, for the purpose of "loading" them and soliciting even more money once the victims had been deprived of their initial investments;

15.    It was further part of the conspiracy that conspirators working for boiler rooms would and did instruct victims to wire funds for the purported

investment opportunities, and related fees and expenses, into the bank accounts of shell companies and other entities created and controlled by conspirators in the United States;

16.    It was further part of the conspiracy that conspirators would and did contact foreign victims, via interstate and foreign mailings, emails, and telephone calls, for the purported purpose of having them renew trademarks that the conspirators claimed were set to expire.   In truth and in fact, however, the conspirators were not acting on behalf of any legitimate trademark organization or government authority, and were soliciting money from the victims by means of materially false and fraudulent pretenses and representations;

17.    It was further part of the conspiracy that conspirators would and did instruct victims to wire funds for the purported trademark renewals, and related fees, into the bank accounts of shell companies and other entities created and controlled by conspirators in the United States;

18.    It was further part of the conspiracy that conspirators would and did contact foreign victims, via interstate and foreign emails and telephone calls, for the purported purpose of buying their collections of gems, precious stones, and jewelry.   In truth and in fact, however, the conspirators did not intend to actually buy those collections, and were soliciting money from the

victims by means of materially false and fraudulent pretenses and
representations;

19.    It was further part of the conspiracy that conspirators would and
did instruct victims to wire funds to complete the sale of their collections of
gems, precious stones, and jewelry, as well as related fees, into the bank
accounts of shell companies and other entities created and controlled by
conspirators in the United States;

20.    It was further part of the conspiracy that conspirators would and
did wire and send, and cause to be wired and sent, the proceeds that they had
fraudulently obtained from victims to multiple financial institutions, including
financial institutions located outside of the United States, in order to promote
the carrying on of the aforementioned fraud schemes;

21.    It was further part of the conspiracy that conspirators would and
did wire and send, and cause to be wired and sent, the proceeds that they had
fraudulently obtained from victims to multiple financial institutions, including
financial institutions located outside of the United States, in order to conceal
and disguise the source of, and to hinder any efforts to locate, those proceeds;

22.    It was further part of the conspiracy that conspirators would and
did withdraw, and cause to be withdrawn, in cash the proceeds that they had
fraudulently obtained from victims, in order to conceal and disguise the source

of, and to hinder any efforts to locate, those proceeds;

23.    It was further part of the conspiracy that conspirators would and did share in the proceeds of the fraud schemes, usually receiving a set percentage of the proceeds that they received, withdrew, handled and transferred; and

24.    It was further part of the conspiracy that conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1956(h).

### COUNTS TWO THROUGH TWENTY-TWO
**(Money Laundering – 18 U.S.C. § 1956(a)(1)(B)(i))**

1.    Paragraphs 1 through 7 of Count One of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendant,

DOUGLAS EDWIN CASIMIRI,

did conduct, and aid and abet others in conducting, a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit and transfer monetary instruments and funds which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343,

8

knowing that the transaction was designed in whole and in part to conceal and

disguise the nature, location, source, ownership and control of the proceeds of

said specified unlawful activity, knowing that the property involved in the

financial transaction represented the proceeds of some form of unlawful

activity:

| Count | Date of Transaction | Amount | Nature of Transaction |
|-------|---------------------|--------|------------------------|
| **Two** | October 5, 2017 | $20,000 | Wire from CASIMIRI's account at Bank of America (-9051) to his account at BB&T Bank (-0836) |
| **Three** | October 17, 2017 | $18,000 | Wire from CASIMIRI's account at Bank of America (-9051) to his account at BB&T Bank (-0836) |
| **Four** | October 26, 2017 | $15,996.01 | Wire from CASIMIRI's account at Bank of America (-9051) to his account at BB&T Bank (-0836) |
| **Five** | November 1, 2017 | $4,950 | Wire from CASIMIRI's account at Bank of America (-9051) to his account at BB&T Bank (-0836) |
| **Six** | November 28, 2017 | $14,000 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Bangkok Bank in Thailand (-8404) |
| **Seven** | November 29, 2017 | $8,500 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Bangkok Bank in Thailand (-8404) |
| **Eight** | November 30, 2017 | $192,406.95 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Wells Fargo in Georgia (-0390) |
| **Nine** | November 30, 2017 | $24,732.68 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Wells Fargo in Georgia (-0390) |

| Count | Date of Transaction | Amount | Nature of Transaction |
|---|---|---|---|
| Ten | November 30, 2017 | $7,677.83 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at DSK Bank in Bulgaria (-3831) |
| Eleven | December 1, 2017 | $5,600.64 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Bank of America in Florida (-1098) |
| Twelve | December 1, 2017 | $58,634.84 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at DBS Bank in Hong Kong (-2476) |
| Thirteen | December 1, 2017 | $2,000 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Caxiabank in Spain (-5234) |
| Fourteen | December 4, 2017 | $1,600 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Bank of America in Florida (-6467) |
| Fifteen | December 4, 2017 | $37,338.25 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at HSBC Bank in Hong Kong (-1838) |
| Sixteen | December 4, 2017 | $5,000 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Investbank in the Marshall Islands (-6600) |
| Seventeen | December 5, 2017 | $18,600 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Bankgkok Bank in Thailand (-8404) |
| Eighteen | December 5, 2017 | $925 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at Investbank in the Marshall Islands (-6600) |
| Nineteen | December 5, 2017 | $25,000 | Wire from CASIMIRI's account at BB&T Bank (-0836) to an account at DSK Bank in Bulgaria (-4462) |

| Count | Date of Transaction | Amount | Nature of Transaction |
|---|---|---|---|
| **Twenty** | January 16, 2018 | $400 | Cash withdrawal from Co-conspirator #2's account at Fifth Third Bank (-4595) |
| **Twenty-one** | January 26, 2018 | $500 | Cash withdrawal from Co-conspirator #2's account at Fifth Third Bank (-4595) |
| **Twenty-two** | January 28, 2018 | $500 | Cash withdrawal from Co-conspirator #2's account at Fifth Third Bank (-4595) |

In violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

## FORFEITURE

1. The allegations contained in Counts One through Twenty-Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of 18 U.S.C. § 982(a)(1).

2. Upon a conviction of a violation of 18 U.S.C. § 1956 as alleged in Counts One through Twenty-Two, the defendant,

### DOUGLAS EDWIN CASIMIRI,

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense and any property traceable to such property.

3. The assets to be forfeited include, but are not limited to, the following property which was involved in the offenses:

    a.       An order of forfeiture in an amount which represents the proceeds of the offenses;

    b.       Approximately $65,018.15 seized from account ending -5392 at Bank of America;

    c.       Approximately $48,145.12 seized from account ending -4584 at Bank of America;

    d.       Approximately $14,519.24 seized from account ending -9051 at Bank of America;

    e.       Approximately $18,058.55 seized from account ending -6131 at Bank of America;

    f.       Approximately $54,875.64 seized from account ending -4595 at Fifth Third Bank;

    g.       Approximately $32,297.66 seized from account ending -8045 at Bank of America;

    h.       Approximately $25,781.03 seized from account ending -5194 at Regions Bank;

    i.       Approximately $184,063.69 seized from account ending -6999 at SunTrust Bank; and

    j.       Approximately $25,816.03 seized from account ending -0848 at SunTrust Bank.

4.       If any of the forfeitable assets described above, as a result of any act or omission of the defendant:

    (a)     cannot be located upon the exercise of due diligence;

    (b)     has been transferred or sold to, or deposited with, a third person;

    (c)     has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. §853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Patrick D. Scruggs
Assistant United States Attorney

By: _____
Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34
March 18

No.

# UNITED STATES DISTRICT COURT
## Middle District of Florida
## Tampa Division

THE UNITED STATES OF AMERICA

vs.

DOUGLAS EDWIN CASIMIRI

## INDICTMENT

Violations:   18 U.S.C. §§ 1956(h), 1956(a)(1(B)(i)

A true bill,

_Karen A. Epting_
Foreperson

Filed in open court this 5th day

of April 2018.

_____
Clerk

Bail $_____

GPO 863 525